UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PATRICIA G. BARNES., | Case No. 3:18-cv-00199-MMD-WGC |
| Plaintiff, | ORDER |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner Social Security Administration, | |
| Defendants. | |

## I. SUMMARY

Pro se Plaintiff Patricia G. Barnes brought this action under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") (ECF Nos. 1, 86). Among various motions currently pending before the Court, Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("SSA") (herein "Defendant") has moved to dismiss Plaintiff's second amended complaint ("SAC") (ECF No. 86) ("MTD"). (ECF No. 87.) Defendant has also filed a motion to strike Plaintiff's request for jury trial on her ADEA claims. (ECF No. 88.)

The Court grants Defendant's MTD (ECF No. 87) and denies Defendant's motion to strike (ECF No. 88) as moot. As to other pending motions, the Court rules as follows: Plaintiff's motion to amend and her motions providing supplementation in support of her response to the MTD (ECF Nos. 103, 110, 119) are granted. All other pending motions (ECF Nos. 93, 125) are denied as moot.[1]

///

---

[1] The Court has reviewed the briefs related to the pending motions (ECF Nos. 90, 96, 98, 107, 117, 127, 128, 132, 134). The Court also notes that it postponed the deadline

## II. BACKGROUND

This lawsuit stems from Plaintiff's non-selection for one of several attorney-advisor positions with the SSA in Reno, Nevada in 2011.[2] At the relevant time, Plaintiff was 60 years old. Plaintiff is an attorney with more than 20 years of legal experience. She has written legal books and has had articles published nationally. She also edits two employment law blogs.

A new SSA Office of Disability Adjudication and Review (ODAR) was set to open in Reno in September 2011. Plaintiff inquired whether the office was hiring attorneys and hearing officers. Posting for the attorney-advisor vacancies were not "publicly" available. (*Id.* at 15.) In June 2011, SSA's Selection Officer Jimmy Elkins advised Plaintiff to apply promptly because the recruitment was closing. He did not provide Plaintiff a copy of a vacancy announcement.

On July 18, 2011, Plaintiff interviewed for one of the attorney-advisor positions with Elkins and his assistant, Barbara Groberg. Elkins said that after Plaintiff's interview, he turned to Groberg immediately to state that Plaintiff was excluded from further consideration. Elkins alone made the non-selection decision.

Upon Plaintiff's inquiry, Elkins informed Plaintiff she was not selected and referred her to Ed Pilapil, a regional SSA human resources officer in California, who was in charge of the hiring process. After consulting with Elkins, Pilapil told Plaintiff on August 10, 2011, that she was not hired because Elkins felt she was not sufficiently excited about the position.

Elkins agreed that Plaintiff's qualifications for the attorney-advisor position were superior but said he selected candidates that he felt had "a personality that would fit with the agency's culture and mission" and ignored objective qualifications. (*Id.* at 5.)

///

---

for Defendant to respond to Plaintiff's motion for summary judgment (ECF No. 93) to 21 days from the Court's ruling on Defendant's MTD. (ECF No. 100.)

[2]The facts of this case derive from the SAC (ECF No. 86), unless otherwise noted. Notably in the SAC Plaintiff cites to deposition testimony and affidavits from Defendant's employees, among other things.

Plaintiff asked Pilapil why the jobs were not advertised nationally so anyone could apply, and he responded that the jobs were in the "excepted service" and Elkins had complete discretion to recruit in any way he wished. Pilapil further explained that Elkins notified two institutions about the vacancies—the law school at the University of Nevada, Las Vegas ("UNLV") and an outgoing office of Peace Corps volunteers. Plaintiff "observed" (*id.*) that both institutions have populations with an average age well below 40.

Plaintiff asked Pilapil for the ages of candidates who were hired, and he told her to file a Freedom of Information Act ("FOIA") request. Plaintiff filed a FOIA request the same day with the SSA. She emailed a copy to Elkins, along with a note questioning whether the hiring process was fair and equitable and asking him to reconsider her application if any candidate rejected the offer of a position. Several candidates subsequently declined appointment, but Elkins never reconsidered Plaintiff's application.

Younger candidates—under 40—were hired by the SSA instead of Plaintiff. For example, on August 11, 2011, Pilapil authorized Elkins to make job offers to 2 candidates who were younger and less qualified than Plaintiff. The following day, Pilapil authorized the hiring of a 26-year-old with "13 months of low-level practice experience." (*Id.* at 6.) The final offer was made on August 29, 2011, which was 19 days after Plaintiff complained to Elkins and Pilapil of age discrimination. A 31-year-old was hired the following day.

Elkins and Groberg submitted sworn affidavits to the EEO containing identical language and falsehoods. They claimed that one other candidate was over 40—a 47-year-old man who had volunteered for the Peace Corps—*and* that he was one of the first 5 candidates selected. However, discovery revealed he was the ninth candidate selected. Elkins and Groberg also swore that 7 selectees were offered positions when, in fact, Elkins selected 11 candidates and two of the candidates not mentioned graduated law school in 2009 and 2010.

In addition to citing Elkins' deposition testimony, affidavits and discovery, Plaintiff attaches the following to the SAC: (1) a 2014 article from the Baltimore Sun newspaper stating that the SSA found no case of discrimination over 4 years after having processed

3

2,292 complaints of discrimination; (2) a copy of merit selection principles that Elkins was supposed to follow; and (3) a Forbes article titled "The End of Culture Fit"—contending that a hiring process based on culture fit is fraught with bias. (*Id.* at 10–26.)

Plaintiff asserts the following four claims: (1) age discrimination based on disparate treatment in violation of the ADEA; (2) age discrimination based on disparate impact in violation of the ADEA; (3) reprisal for opposing age discrimination in violation of the ADEA, 29 U.S.C. § 623, "Section Four D[;]" and (4) retaliation in violation of Title VII, 42 U. S.C. § 2000e–3(a), Section 704(a).

In response to Defendant's MTD, Plaintiff filed a response (ECF No. 90), a motion to amend her response to purportedly make corrections to record cites (ECF No. 103),[3] a motion to supplement providing additional caselaw and argument (ECF No. 110)[4] and a separate motion for leave to supplement her response with accompanying caselaw attached (ECF Nos. 119, 119-1). Defendant filed a reply in support of the MTD (ECF No. 96) and oppositions to Plaintiff's two latter attempts to supplement her response (ECF Nos. 117, 127). Plaintiff then filed a response to Defendant's opposition to her second motion to supplement. (ECF No. 128.)

### III. MOTION TO DISMISS (ECF NO. 87)

#### A. Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough

///

---

[3]To the extent Plaintiff's response makes allegations not in the SAC, the Court disregards them.

[4]ECF No. 110 is currently docketed as a response.

to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570. A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)).

In ruling on a motion to dismiss, a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion . . . into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Further, because Plaintiff proceeds pro se—albeit an experienced attorney—the Court will liberally construe her filings in this lawsuit. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

///

**B.     Analysis**

Defendant moves to dismiss the SAC, citing pleading and jurisdictional deficiencies. (ECF No. 87.) Defendant chiefly argues the SAC violates the pleading standards under Fed. R. Civ. P. 8(a)(2), 8(d)(1) and 10(b)—in gist for lacking conciseness and numbering—and is otherwise deprived of facts to establish Plaintiff is entitled to relief on any of her claims.[5] (*Id.* at 2–3.) Construing Plaintiff's SAC liberally, the Court finds contrary to Defendant's contention that Plaintiff's allegation fails under the minimal pleading requirements of Rules 8 and 10. The Court will therefore address each of Plaintiff's claims in turn, considering whether Plaintiff has stated colorable claims that could entitle her to relief. Ultimately, the Court concludes that Plaintiff fails to state any claim for which the Court may grant relief and therefore grants Defendant's MTD on this ground.

### 1.     Claim One: Disparate Treatment

Plaintiff's first claim is for alleged discrimination based on disparate treatment under the ADEA. (ECF No. 86 at 13.) Plaintiff alleges that she was subject to disparate treatment due to her age because the SSA hired younger, lesser qualified individuals instead of her, in violation of 29 U.S.C. § 623(a)(1). (*Id.*) She bases her contention on the fact that Elkins admittedly made hiring decisions based on subjective, as opposed to objective factors— such as personality and cultural fit. (*Id.*) Defendant argues that Plaintiff's claim fails because Plaintiff's allegations do not demonstrate that Defendant's employees' hiring decisions were based on age. (ECF No. 87 at 4.) The Court agrees with Defendant.

The ADEA's anti-discrimination provision is "limited to individuals who are at least 40 years of age." 29 U.S.C. § 631(a). It applies to protect both federal employees and applicants for federal employment. *Id.* at § 633a(a). The ADEA specifically provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any

///

---

[5] To the extent the parties raise other arguments—such as those related to Defendant's argument that Plaintiff is precluded from challenging the EEO process in this action (*e.g.*, ECF No. 87 at 7–8)—the Court declines to address them.

6

individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's age." *Id.* at § 623(a)(1) (emphasis added).

A plaintiff "retains the burden of persuasion to establish that age was the 'but for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009). In *Gross*, the Supreme Court declined to apply the *McDonnell Douglas* burden shifting framework to ADEA cases. *Id.* at 174 ("This Court never held that this burden-shifting framework applies to ADEA claims. And, we decline to do so now."). Nonetheless, the Ninth Circuit has concluded that *Gross* only applies at trial—whereas the *McDonnell Douglas* framework applies at summary judgment—and thus concluding that *Gross* finds the *McDonnell Douglas* framework inapplicable to ADEA cases at summary judgment "is not inconsistent with *Gross*." *Shelley v. Geren*, 666 F.3d 599, 607–08 (9th Cir. 2012). In short, it is unclear what framework the Court should consider at the motion to dismiss stage.

In any event, "[despite [the *McDonnell Douglas*] burden shifting, the ultimate burden of proof remains always on the [job applicant] to show that [the employer] discriminated because of their age." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000). Proof of discriminatory motive is critical in a disparate treatment claim—unlike with a disparate impact claim. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993) (quotations and citations omitted). Further, "[u]nlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." *Shelley*, 666 F.3d at 607 (quoting *Gross*). In *Hazen Paper Co.*, the Supreme Court "clarif[ied] that there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age." *Id.* at 609; *see also Casillas v. U.S. Navy*, 735 F.2d 338, 345 (9th Cir. 1984) (internal quotation and citation omitted) (providing, albeit in the Title VII context: "We have explicitly rejected the idea that an employer's use of subjective employment criteria has a talismanic significance: 'Even assuming subjectivity was involved here, it has never been held that subjective evaluation

by an employer is *per se* prohibited by Title VII, or alone shifts to the defendant the burden of proving absence of intentional . . . bias . . .'"); *see Murphy v. Yellow Freight System, Inc.*, 832 F. Supp. 1543, 1548 (N.D. G.A. 1993) (concluding in the ADEA context that "[t]he use of subjective factors in making employment decisions cannot be sufficient to support a finding of discrimination").

The SAC is ripe with allegations by Plaintiff and statements providing that Elkins' decision for not hiring Plaintiff was based on factors completely exclusive of age. (*See generally* ECF No. 86.) Accepting these allegations as true, Plaintiff fails to state a claim for disparate treatment. In her response to the MTD Plaintiff posits that the issue is whether the selecting officer's subjective considerations were pretext for age discrimination. (ECF No. 90 at 6–13.) However, it is evident that Plaintiff fails to establish her claim because pointing to Defendant's subjective non-discriminatory explanations for not hiring Plaintiff is insufficient to support an inferential leap to conclude discrimination.[6] At most, the SAC supports an inference of the "mere possibility of misconduct"—which is not enough. *Iqbal*, 556 U.S. at 679. The Court therefore finds that Plaintiff fails to state a claim based on the allegations in the SAC. As it is clear from the face of the SAC that the SSA declined to hire Plaintiff for non-age-related reasons, the Court concludes that amending the SAC on this claim would be futile. Accordingly, Plaintiff's disparate treatment claim is dismissed with prejudice.

///

---

[6]Plaintiff's first motion to supplement (ECF No. 110) offers the case of *Figueroa v. Pompeo*, 923 F.3d 1078 (D.C. Cir. 2019) to support her argument that Defendant cannot rely on subjective factors in making hiring decisions under the ADEA. *Figueroa* does not support that plain conclusion and considers subjectivity within the context of the three-step *McDonnell Douglas* framework under Title VII. Within that framework, the circuit court concludes that "an employer at the second prong [—after the employee establishes a prima facie case—] must proffer admissible evidence showing a legitimate, nondiscriminatory, clear, and reasonably specific explanation for its actions." *Id.* at 1092. The court further explains that when the employer's stated reason—at step two—involves subjective criteria, the employer must provide evidence giving the plaintiff "fair notice as to how the employer applied the standards to the employee's own circumstances"—and not merely provide vague reasons. The Court therefore concludes that even if *Figueroa* directed this Court's analysis, the SAC undermines any conclusion that Plaintiff could possibly establish a claim of discrimination based on age in this case as the Court accepts as true the rationale Plaintiff claims the selecting officers provided.

### 2. Claim Two: Disparate Impact

To support a claim of discrimination based on disparate impact under the ADEA, a plaintiff must identify a test, requirement or practice of the employer that has an adverse impact on older workers. *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 241 (2005). It is not enough to "simply allege that there is disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities." (*Id.*) (internal quotations and citations omitted).

Defendant argues that Plaintiff has failed to state a claim because Plaintiff's allegations are too vague and conclusory as Plaintiff fails to identify the alleged policies in question with sufficient specificity or to demonstrate a causal connection to alleged disparate impact. (ECF No. 87 at 5.) The Court agrees with Defendant, especially on the latter contention.

For this claim, Plaintiff specifically asserts that the SSA's hiring policies deprive older job seekers of equal employment opportunity because the recruitment process was designed to solicit applications from workers under the age of 40. (ECF No. 86 at 5, 15.) Plaintiff's statement is based on the fact that the attorney-advisor positions were listed as "excepted service" positions. (*Id.* at 15.) She asserts this listing gave selection officers unfettered discretion to recruit candidates that had no relevant training or experience. (*Id.*) She further asserts that the position was not "publicly" available—although Elkins notified UNLV and an outgoing office of Peace Corps volunteers. (*Id.* at 5, 15.) She contends that while facially neutral, the recruitment, evaluation and hiring policies based on the "excepted service" listing adversely affect job seekers that are 40 years old and over. (*Id.* at 15.)

The Court concludes that even accepting Plaintiff's allegations as true, Plaintiff's assertion that the hiring policy was *designed* to solicit only young applicants either because it was an "excepted service" listing or not publicly available is based on conjecture. Even at this stage, factual allegations—while accepted as true—must rise

above speculation. *Twombly*, 550 U.S. at 555. While it is not clear how the "excepted service" listing would provide for unfettered discretion to recruit inexperience candidates, such allegations do not allow for a reasonable inference that the policy adversely affects applicants who are over 40. Moreover, the SAC lacks any allegations of statistical evidence of disparities in the SSA's hiring process in general or the "excepted service" listing in particular from which the Court could infer a conclusion of disparate impact causally related to age discrimination. Notably, the SAC provides that the only other applicant over 40 was selected. (ECF No. 86 at 6–7.) While Plaintiff's response to the MTD offers additional relevant allegations and statistics not alleged in the SAC (ECF No. 90 at 13–15), such allegations are not enough for this Court to conclude that permitting Plaintiff to amend this claim would be anything but futile. Accordingly, the Court dismisses Plaintiff's disparate impact claim with prejudice.

### 3. Claim Three: Reprisal for Opposing Age Discrimination

Plaintiff next asserts a claim of reprisal for opposing age discrimination under the ADEA, contending that Elkins testified at his deposition that he did not hire her "because of her activities in opposition to employment discrimination . . .." (ECF No. 86 at 15–17.) Plaintiff claims Elkins particularly referenced her "syndicated employment blog, Abuser Goes to Work, at abuser goestowork.com." (*Id.*) Plaintiff brings this claim under "29 U.S.C. § 623, Section Four D." (*Id.*)

As an initial matter, Defendant seeks dismissal of the claim, arguing that no such statute exists. (ECF No. 87 at 5–6; ECF No. 96 at 4.) The Court agrees with Defendant that as written no such statute exists. Further, Plaintiff reasserts the same incorrect statute in her response, but accompanied by the relevant language. (ECF No. 90 at 15–16.) In any event, with minimal effort Defendant could ascertain that Plaintiff's claim is raised under 29 U.S.C. § 623(d) because that provision is expressly titled "Opposition to unlawful practices . . .." The section also provides that "[i]t shall be unlawful for an employer to discriminate against . . . applicants for employment . . . because such individual . . . has opposed any practice made unlawful by this section." 29 U.S.C. § 623(d). This is evidently

Plaintiff's assertion. Accordingly, construing Plaintiff's SAC liberally, the Court deems Plaintiff to have asserted a claim under 29 U.S.C. § 623(d)—not 29 U.S.C. § 623(4)(d), which does not exist.

Defendant seeks dismissal of this claim on two additional grounds. First, Defendant in gist contends that Plaintiff's description of alleged protected activity is too vague and conclusory to support a claim. (ECF No. 87 at 6.) Second, Defendant refers to the relevant portion of Elkins' deposition testimony that Plaintiff provides and argue that Plaintiff's quoted language (ECF No. 86 at 16) does not demonstrate reprisal. (ECF No. 87 at 6.) The Court agrees with Defendant in both regards.

At most, Plaintiff's SAC attempts to establish that her blog writings amount to protected activity because her blog "regularly features articles about employment discrimination based on age." (ECF No. 86 at 16.) However, Plaintiff provides no legal authority to support a finding that her blog writings may amount to protected activity during the employment application process and as to the SSA specifically. Writing a blog that features articles about age discrimination is not analogous to opposition activities that have been found to amount to protected activity under § 623(d). *See, e.g.*, *Stilwell v. City of Williams*, 831 F.3d 1234, (9th Cir. 2016) (concluding that an employee's sworn statement and imminent testimony in age discrimination lawsuit *relating to the employer's illegal practices* were protected First Amendment retaliation speech covered under the ADEA); *Poland v. Chertoff*, 494 F.3d 1174, 1180 (9th Cir. 2007) ("[F]iling of EEO complaints [against employer] was a protected activity."); *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763 (9th Cir. 1996) (providing that protected activity is activity that is reasonable in opposing discrimination balanced against "Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel"); *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) ("[P]rotected opposition activity includes . . . 'informal protests of discriminatory employment practices, including making complaints to management.'") (internal quotation and citation omitted); *Johnson v. Mech. & Farmers Bank*, 309 F. App'x 675, 685 (4th Cir. 2009) ("Opposition

activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities.") (quotations and citations omitted); *Morgan v. Napolitano*, 938 F. Supp. 2d 1162, 1178 (E.D. Cal. 2013) (finding employee's wife's representation of agency employees in employment disputes with the employee's employer amounted to protect activity under the ADEA based on a third-party retaliation theory); *see also Lalau v. City & County of Honolulu*, 938 F. Supp. 2d 1000, 1018 (D. Haw. 2013) (finding that 'voicing concern and questioning the validity of citations issued to licensed premises' by employer is not protected activity under the ADEA). Because Plaintiff's conduct does not amount to protected activity, she cannot state a claim under § 623(d).

Even assuming Plaintiff's blog writing amounts to protected activity, Plaintiff's quotes to Elkins' deposition testimony in the SAC does not support a causal link between Plaintiff's non-selection and blog writing about age discrimination in particular. The references to Elkins' testimony show the blogs were a red flag for Elkins because Plaintiff referenced it in her application cover sheet and the blog compared employers to abusers—which led to a concern that Plaintiff would look to criticize Elkins as an employer or create "nothing but problems if she doesn't like what I'm asking her to do." (ECF No. 86 at 16.) Thus, Plaintiff's allegations in the SAC—accepted as true and reflecting Elkins' statements—undermine any viable claim of discrimination or even reprisal based on protected activity because of age.

Accordingly, the Court finds Plaintiff's third claim is not a claim for which relief may be granted. The claim is therefore dismissed with prejudice.

### 4. Claim Four: Retaliation in Violation of Title VII

Plaintiff's fourth—and final—claim is for retaliation brought under Title VII. (ECF No. 86 at 17.) Defendant moves to dismiss this claim, contending, *inter alia*, that Plaintiff has failed to exhaust her administrative remedies and otherwise fails to state a colorable claim for relief. (ECF No. 87 at 6–7; ECF No. 96 at 1–3.) The Court first addresses Defendant's exhaustion argument.

The parties disagree as to whether Plaintiff is required to exhaust her administrative remedies before the Court may exercise subject matter jurisdiction over this claim. Citing *Lyons v. England*, 307 F.3d 1092, 1103 (9th Cir. 2002), Defendant argues that Plaintiff's failure to exhaust deprives the Court of subject matter jurisdiction over the claim. (ECF No. 87 at 6–7.) Plaintiff argues to the contrary. In the second supplementation to her response (ECF Nos. 119, 119-1), Plaintiff provides a recent Supreme Court decision—*Fort Bend County, Texas v. Davis*, 139 S. Ct. 1843 (2019) ("*Fort Bend*")—which settles the issue. In *Fort Bend*, the Supreme Court held that Title VII's charge-filing requirement is not jurisdictional but is instead a claim-processing rule. *Id.* at 1846, 1849–50. However, as to the present issue, the high court's holding ultimately provides a distinction without much meaning because the Court nonetheless concluded that exhaustion under Title VII is mandatory. *Id.* at 1851.

Plaintiff was required to exhaust her administrative remedies. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002), *as amended* (Feb. 20, 2002). A defendant has the burden of proving such administrative remedies have not been exhausted. *See, e.g.*, *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (explaining that the failure to exhaust is an affirmative defense that must be pleaded and proved by defendant); *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) (same).

Here, Defendant argues that there is no evidence that Plaintiff exhausted her Title VII retaliation claim. (ECF No. 87 at 6–7; ECF No. 96 at 1–2.) While Plaintiff contends, *inter alia*, that she addressed her activity in opposition to discrimination in EEO administrative proceedings (ECF No. 90 at 17), she does not provide an attachment of the filing for the Court to review. The Court will nonetheless presume that Plaintiff in fact exhausted the issue of retaliation because Plaintiff's fourth claim is essentially based on the same facts underlying claim three—that Plaintiff was not hired in reprisal/retaliation because she opposed unlawful employment practices by engaging in protected activity—

///

///

13

writing about employment discrimination based on status protected under Title VII (i.e., race, sex) via her employment blog.[7] (ECF No. 86 at 17.)

In any event, the Court agrees with Defendant that Plaintiff fails to state a claim for which relief may be granted. As the Court found above, Plaintiff fails to establish that her employment blog amounts to protected activity during the job application process and as to the SSA.[8] *See, e.g.*, *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002) (explaining the requirements for establishing a prima facie case of retaliation under Title VII). Accordingly, like claim three, claim four is dismissed with prejudice.

**IV.     MOTION TO STRIKE (ECF NO. 88)**

Defendant has moved to strike Plaintiff's request for a jury trial on her ADEA claims. (ECF No. 88; ECF No. 86 at 19.) The Court denies the motion as moot in light of its conclusion that Plaintiff fails to state any claim for which relief may be granted.

**V.      CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Plaintiff's motion to amend (ECF No. 103) and motions providing supplementation (ECF Nos. 110, 119) are granted.

It is further ordered that Defendant's motion to dismiss (ECF No. 87) is granted. Plaintiffs' claims are dismissed with prejudice as amendment would be futile.

It is further ordered that Defendant's motion to strike (ECF No. 88) and all other pending motions (ECF Nos. 93, 125) are denied as moot.

///

---

[7]Notably, Defendant does not challenge Plaintiff's third claim on the basis of exhaustion.

[8]Relative to her third claim, Plaintiff's fourth claim merely asserts a broader range of conduct her blog regularly features beyond age discrimination—such as employment discrimination on the basis of race, sex, gender orientation, religion, color and national origin. (ECF No. 86 at 17.)

14

The Clerk is directed to enter judgment in accordance with this order and close this case.

DATED THIS 29th day of July 2019.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE