UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| PATRICIA G. BARNES,<br><br>　　　　　　　　Plaintiff,<br>　v.<br>KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration, *et al.*,<br>　　　　　　　　Defendants. | Case No. 3:18-cv-00199-MMD-WGC<br><br>ORDER |

**I.　SUMMARY**

On July 6, 2021, the Court granted *pro se* Plaintiff Patricia Barnes leave to file a fourth amended complaint to amend her First Amendment retaliation claim under *Bivens*.[1] (ECF No. 181 ("July 6 Order").) Barnes thereafter filed her fourth amended complaint. (ECF No. 184 ("FAC").) Before the Court now is Defendants Kilolo Kijakazi[2] and Jimmy Elkins's motion to dismiss the FAC. (ECF No. 186 ("Motion").)[3] Because Barnes's revised disparate-impact age discrimination claim under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA") remains largely the same and special factors counsel hesitation to extend a *Bivens* action—as further explained below—Defendants' Motion is granted in part and denied in part.

---

[1] *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[2] Andrew Saul was the previous Commissioner of the United States Social Security Administration ("SSA"). Kilolo Kijakazi is the current Acting Commissioner of the SSA and thus the proper Defendant. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

[3] The parties filed a corresponding response and reply. (ECF Nos. 198, 210.) Barnes also filed a motion to supplement her response to offer a recent Ninth Circuit Court of Appeals' decision relating to a First Amendment issue. (ECF No. 218.) The Court grants the motion to supplement.

## II. BACKGROUND

The following facts are taken from Barnes's FAC (ECF No. 184), unless noted otherwise. This action stems from Barnes's non-selection for one of several attorney-advisor positions with the SSA in Reno, Nevada. (*Id.*) At the relevant time of the events that give rise to this action, Barnes was 60 years of age. (*Id.* at 4.)

### A. Attorney-Advisor Positions

In 2011, Barnes noticed a legal assistant position with the SSA in Reno, advertised on the federal government's recruiting site. (*Id.*) Barnes reached out to the SSA to inquire if they were hiring attorneys. (*Id.*) SSA Selection Officer Jimmy Elkins told Barnes there were open attorney-advisor positions, but Barnes would have to apply promptly because recruitment was closing. (*Id.*) Despite not being provided information and unable to locate a posting online, Barnes emailed her application to Elkins in June 2011. (*Id.* at 4-5.)

According to Barnes, the SSA did not have a standard practice for recruiting, and hiring managers decided how to recruit. (*Id.* at 5.) Elkins's recruitment for the positions included sending an email to the law school at the University of Nevada, Las Vegas ("UNLV"), and to the Peace Corps office. (*Id.* at 6.) Barnes alleges that 26 applicants applied, and of those applicants, only one was over 40 years of age. (*Id.*) Elkins based his hiring decision on whether an applicant had a personality that fit the SSA's culture and mission. (*Id.* at 8.) Moreover, Elkins held Barnes to a higher standard than younger applicants. (*Id.*) In July 2011, Barnes was notified that she had not been selected. (*Id.* at 9.) Barnes alleges the SSA's recruitment, evaluation, and selection of attorney-advisors had a "disproportionate and adverse" impact on job seekers aged 40 and over, which included Barnes. (*Id.* at 15.) Barnes thus brings a ADEA disparate-impact age discrimination claim against the SSA. (*Id.* at 14-16.)

### B. Employment Law Blog

During the relevant period, Barnes wrote articles on her employment law blog, *When the Abusers Goes to Work.* (*Id.* at 13.) The blog was created in 2010 and chronicles legal development with respect to workplace bullying, harassment, and discrimination.

2

(*Id.*) Barnes alleges that Elkins stated in his deposition that he considered Barnes "unacceptable" because of her blog and that the blog was a "red flag." (*Id.* at 14.) Elkins further stated that he did not select Barnes because of her blog. (*Id.*) According to Barnes, Elkins—as a SSA employee and in his individual capacity—retaliated against Barnes by not hiring her due to the views she expressed on her blog. (*Id.* at 17.) Barnes brings a First Amendment retaliation claim against Elkins under *Bivens*. (*Id.*)

### C. Procedural History

This case has a nonlinear procedural history, and the Court recites it here as it is relevant to this order. Barnes's previous second amended complaint ("SAC") asserted four claims against the SSA including an ADEA disparate-impact age discrimination claim. (ECF No. 86 at 13-17.) Defendants filed a motion to dismiss the SAC. (ECF No. 87.) The Court granted that motion, finding that Barnes had failed to state a claim for which relief may be granted, and Barnes appealed. (ECF Nos. 142, 143, 156.)

The Ninth Circuit issued an opinion affirming in part, and reversing in part, this Court's order dismissing the SAC and remanded for further proceedings. (ECF No. 159.) Specifically, the Ninth Circuit affirmed this Court's dismissal of three of Barnes's claims. (*Id.* at 3-5.) The Ninth Circuit, however, held that Barnes's ADEA disparate-impact claim was plausible and remanded the case to proceed on that claim, and issued its mandate. (ECF Nos. 159 at 5; 161.) Accordingly, on March 4, 2021, this Court ordered Defendants to respond to the remaining claim in the SAC, which Defendant timely filed on April 5, 2021. (ECF Nos. 163, 166.) In a separate order dated March 23, 2021, the Court gave Barnes until April 23, 2021, to file her motion to amend the SAC. (ECF No. 165.)

On April 23, 2021, Barnes filed a motion to amend her SAC, and attached a proposed third amended complaint ("TAC"). (ECF Nos. 167, 167-1.) In her proposed TAC, Barnes asserted four claims. (ECF No. 167-1 at 12-22.) In addition to her ADEA disparate-impact age discrimination claim and two previously dismissed claims, Barnes alleged a First Amendment retaliation claim under *Bivens*. (*Id.*) Because Barnes alleged the same claims already dismissed on mandate, and because Barnes did not identify a cognizable

3

*Bivens* action regarding her First Amendment claim, the Court's July 6 Order denied Barnes's motion to amend. (ECF No. 181.) However, Barnes was granted leave to file a fourth amended complaint to amend her First Amendment retaliation claim and "only that claim." (*Id.*)

### III.    DISCUSSION

In the Motion, Defendants make the following eight arguments: (1) Barnes's amended ADEA disparate-impact claim violates the Court's July 6 Order; (2) Barnes lacks standing to pursue her disparate impact claim; (3) Barnes cannot bring a *Bivens* claim against Elkins in his official capacity;[4] (4) the Court lacks jurisdiction to consider Barnes's *Bivens* claim because the claim presents a "new context" and "special factors" counsel against expanding *Bivens*; (5) Elkins is afforded qualified immunity; (6) Barnes's *Bivens* claim violates the law-of-the-case doctrine and the Ninth Circuit's mandate; (7) Barnes fails to state a claim upon which relief can be granted with respect to her First Amendment retaliation claim; and (8) Barnes did not perfect service of process.[5] (ECF No. 186 at 4-15.) Because the Court agrees that special factors counsel against expanding *Bivens* to Barnes's First Amendment retaliation claim but disagrees that her disparate impact claim should be dismissed, the Court will address the parties' relevant arguments with respect to these two claims below.

### A.    First Amendment Retaliation Claim

As mentioned above, Defendants argue that Barnes cannot bring a First Amendment retaliation claim against Elkins in his personal capacity because the claim presents a "new context" and "special factors" counsel against expanding *Bivens*. (ECF No. 186 at 7-11.) More specifically, Defendants argue that Barnes's claim bears little resemblance to the circumstances previously endorsed as suitable for a *Bivens* remedy by the Supreme Court as set forth in *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017). (*Id.*

---

[4]In her response, Barnes concedes this argument but states that she retains her First Amendment retaliation claim against Elkins in his personal capacity. (ECF No. 198 at 8-9.)

[5]Defendants state in their reply that they withdraw this challenge as Barnes had recently served Elkins. (ECF No. 210 at 12, n.12.)

at 8.) Additionally, Defendants argue that, when considering special factors, the Civil Service Reform Act ("CSRA") provides an alternative remedy and allowing federal government officials to be personally liable for their official acts would lead to difficulties and expenses. (*Id.* at 9-11.) Barnes counters by citing several cases to support her position that since *Abbasi*, the Ninth Circuit has recognized First Amendment retaliation claims under *Bivens*. (ECF No. 198 at 10-11.) Because the Court agrees with Defendants that special factors counsel against expanding *Bivens* to First Amendment retaliation claims in this new employment context, the Court will first set forth the legal standard and the discuss the parties' arguments as to special factors.

### 1. *Bivens*

The United States is a sovereign, and as such, is immune from suits unless it has expressly waived such immunity and consented to being sued. *See United States v. Shaw*, 309 U.S. 495, 500-01 (1940). A suit against officers or employees of the United States in their official capacity is a suit against the United States. *See Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985). However, in *Bivens*, the Supreme Court held that a violation of a person's Fourth Amendment rights by federal officials acting under the color of federal law gives rise to a federal cause of action for damages for their unconstitutional conduct. 403 U.S. 388 (1971). Since *Bivens*, the Supreme Court has recognized—in addition to the Fourth Amendment—violations of the Fifth and Eighth Amendments in a *Bivens* action. *See Davis v. Passman*, 442 U.S. 228, 248-49 (1979) (Fifth Amendment); *Carlson v. Green*, 446 U.S. 14, 16-18 (1980) (Eighth Amendment). More recently, the Supreme Court has also held that "expanding the *Bivens* remedy is now considered a 'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1848 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). In 2021, the Ninth Circuit extended a *Bivens* remedy to a First Amendment retaliation claim arising in a new context. *See also Boule v. Egbert*, 998 F.3d 370, 390 (9th Cir. 2021), *cert. granted in part*, 142 S. Ct. 457 (2021).

When asked to extend *Bivens*, the Supreme Court has instructed lower courts to "engage in a two-step inquiry." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). First,

5

courts determine whether an action presents "a new *Bivens* context" by asking whether "the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court."⁶ *Abbasi*, 137 S. Ct. at 1859. If the action presents a new context, courts then proceed to query whether "special factors counsel[ ] hesitation" against allowing the requested remedy in the new context. *Id.* at 1857 (quoting *Carlson*, 446 U.S. at 18). While the Supreme Court has not specified factors that courts must consider, in *Hernandez*, it generally instructed courts to "consider the risk of interfering with the authority of the other branches" and courts should "ask whether there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy and whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." 140 S. Ct. at 743 (internal citations and quotation marks omitted). "Thus, to be a 'special factor counseling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative." *Abbasi*, 137 S. Ct. at 1858 (internal quotation marks in original).

### 2. New Context

In regard to the first step, the Court finds that Barnes's *Bivens* claim presents a new context. Barnes's First Amendment retaliation claim is different in a "meaningful way" than previous Fourth, Fifth, and Eighth Amendment claims recognized by the Supreme Court respectively in *Bivens*, *Davis*, and *Carlson*. *See id.* at 1860 (articulating a meaningful difference for a new context analysis includes "the constitutional right at issue"). In the FAC, Barnes alleges facts relating to a SSA employee refusing to hire her for an attorney-advisor position because of views she expressed on her blog. (ECF No. 184 at 17-18.) This First Amendment retaliation claim bears "little resemblance" to a

---

⁶Although not an exhaustive list, the Supreme Court expressed some meaningful differences for a new context including: "the rank of the officers involved; the constitutional right at issue; the generality of specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Abbasi*, 137 S. Ct. at 1860.

cause of action for damages for violation of the Fourth Amendment freedom from unreasonable searches and seizures, Fifth Amendment's Due Process Clause to be free from gender discrimination, and Eighth Amendment rights for failure to provide medical treatment. *Abbasi*, 137 S. Ct. at 1860. *See Bivens*, 403 U.S. 388 (1971); *Davis*, 442 U.S. 228 (1979); *Carlson*, 446 U.S. 14 (1980). *See also Boule*, 998 F.3d at 390 (holding that the plaintiff's First Amendment retaliation claim arises in a new context). Moreover, Barnes's claim is also meaningfully different in that it is brought against Elkins, a Selection Officer for the SSA. *See Hernandez*, 140 S. Ct. at 743 (citation omitted) (expressing that the first step of the two-step inquiry may include determining if the claim involves a "new category of defendants."). Because Barnes's claim presents a new context, the Court proceeds to consider special factors that may counsel hesitation in extending *Bivens*.

### 3. Special Factors

Defendants argue special factors that counsel against expanding *Bivens* include the existence of the CSRA and the costs and consequences that will result in allowing a *Bivens* remedy in this employment context. (ECF No. 186 at 9-11.) Barnes appears to argue that the importance of the right to protected speech is a special factor in favor of expanding *Bivens*, and she further asserts that the Ninth Circuit has done so in several cases including *Boule v. Egbert*, 998 F.3d 370 (9th Cir. 2021). (ECF No. 198 at 9-11.) The Court will address these arguments below and finds that special factors counsel hesitation in expanding a *Bivens* remedy to the First Amendment retaliation claim in this specific employment context.

#### i. CSRA

Defendants direct the Court to subsection (b)(2) of the merit system principles of the CSRA, 5 U.S.C. § 2301, to argue that special factors do not warrant an expansion of *Bivens*.[7] (ECF No. 186 at 9-10.) According to Defendants, the CSRA constitutes an

---

[7]Section 2301(b)(2) provides the following:
> All employees and applicants for employment should receive fair and equitable treatment in all aspects of personnel management without

7

1  "alternative, remedial structure" to remedy constitutional challenges by job applicants like Barnes. (*Id.* (quoting *Abbasi*, 137 S. Ct. at 1858)). But Defendants' reliance on § 2301(b)(2) is misplaced. A plain text reading of § 2301(b)(2) provides nothing by way of "an alternative remedial structure . . . that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action," *Abbasi*, 137 S. Ct. at 1858, it merely articulates the principles of the CSRA. Defendants notably do not direct the Court to language providing an adequate remedy to protect Barnes's interest in recovering damages for Elkins's alleged constitutional violation. Without more, the Court finds the CSRA does not counsel hesitation to allowing the requested remedy in this new context. *See AFGE Local 1 v. Stone*, 502 F.3d 1027, 1039 (9th Cir. 2007) (quoting *Spagnola v. Mathis*, 859 F.2d 223, 229-30 (D.C. Cir. 1988)) ("[W]e do not suggest that the CSRA precludes the exercise of federal jurisdiction over the constitutional claims of federal employees and job applicants altogether. On the contrary, time and again this court has affirmed the right of civil servants to seek equitable relief against their supervisors, and the agency itself, in vindication of their constitutional rights.").

### ii.   Costs & Consequences

Defendants argue the costs and consequences of extending a *Bivens* remedy to allow a government employee to be sued for damages, in their personal capacity, are special factors that counsel against extending the remedy. (ECF No. 186 at 10.) If a cost-benefit analysis is necessary, the Supreme Court has instructed that the issue falls onto Congress and not on the courts. (*Id.* (citation omitted)). Additionally, Defendants argue that "there is a danger that fear of being sued will dampen the ardor of all but the most resolute, or the most irresponsible public officials, in the unflinching discharge of their duties." (*Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982)). Barnes counters that the Ninth Circuit is well-equipped to "weigh the costs of constitutional violations."

---

> regard to political affiliation, race, color, religion, national origin, sex, marital status, age, or handicapping condition, and with proper regard for their privacy and constitutional rights.

5 U.S.C. § 2301(b)(2).

8

(ECF No. 198 at 16 (quoting *Lanuza v. Love*, 899 F.3d 1019, 1032 (9th Cir 2017)). The Court disagrees with Barnes.

In *Lanuza*, the Ninth Circuit held special factors did not counsel against extending a *Bivens* remedy to an alien's Fifth Amendment due process claim against a government immigration attorney. 899 F.3d 1019. Indeed, the court stated—and as Barnes quotes in part—that "[j]udges are particularly well-equipped to weigh the costs of constitutional violations *that threaten the credibility of our judicial system*." *Id*. at 1032 (emphasis added). The emphasized portion of this quote, which Barnes omitted in her brief, is important. That is because the Ninth Circuit provided a *Bivens* remedy "on narrow and egregious facts" in a case "where an immigration official and officer of the court forged and submitted evidence in a deportation proceeding to deprive an individual of his right to relief." *Id*. at 1021, 1028. Because the government attorney was an officer of the court, the Ninth Circuit stated that "[m]ore often than not, the Judicial Branch, not Congress, . . . is responsible for remedying circumstances where a court's integrity is compromised by the submission of false evidence." *Id*. at 1033. Despite Barnes's reliance on *Lanuza*, it does not stand for the proposition that the courts, rather than Congress, is well-equipped to weigh the costs of all constitutional violations. Rather, as the Supreme Court expressed in *Abbasi*, when determining whether Congress or the courts should provide a damages remedy, "[t]he answer most often will be Congress." 137 S.Ct. at 1857.

Moreover, in *Lanuza*, the Ninth Circuit notably articulated that it did not foresee a flood of potential claimants seeking to avail themselves of this specific *Bivens* action. *Id*. at 1033. The same cannot be said here. As mentioned above, Defendants assert that allowing government officials to be sued will dissuade them from performing duties in assessing job applicants before deciding to hire applicants. (ECF No. 186 at 10.) Inherent in Defendants' argument is the danger of extending *Bivens* to a potential claimant— anyone denied of federal employment and believes the denial was based on protected speech. While the Ninth Circuit did not foresee a flood of potential claimants seeking to avail themselves of a narrow *Bivens* action set forth in *Lanuza*, this Court is uncertain the

9

same holds true for First Amendment retaliation claims in the employment context. That uncertainty therefore counsels hesitation.

### iii. *Boule v. Egbert*

According to Barnes, "ample" Ninth Circuit cases including *Boule*, 998 F.3d 370, have recognized a First Amendment retaliation claim under *Bivens*.[8] (ECF No. 198 at 10-11.) Barnes appears to argue that the importance of the protected right to free speech warrants its recognition as a *Bivens* claim. (*Id.* at 12-13.) Indeed, the Ninth Circuit in *Boule* held that a *Bivens* remedy was available for a First Amendment retaliation claim. *See* 998 F.3d at 390 ("We therefore conclude that [plaintiff's] First Amendment retaliation claim arises in a new context."). The court expressly recognized the importance of the constitutional right. *Id.* at 391 (stating plaintiff's "First Amendment retaliation claim presents an even stronger case for recognition as a *Bivens* claim."). But *Boule* is distinguishable from the facts of this case and, despite Barnes's reliance, counsel further hesitation to not extend *Bivens*.

In *Boule*, the owner of an inn that touches the United States-Canada border sought damages under *Bivens* against a border patrol agent for violating the owner's Fourth and First Amendment rights. *Id.* at 385. After the owner complained to the agent's superiors about an incident where the agent unwelcomely arrived onto the owner's property and caused him bodily injury, the agent retaliated. *Id.* at 386. The agent independently contacted the Internal Revenue Service and asked the agency to look into the owner's tax status. *Id.* The agent also contacted the SSA, the state's licensing department, and the county accessor's office, seeking for each entity to conduct inquiries into the owner's business activities. *Id.* The Ninth Circuit, in extending *Bivens* to the owner's First Amendment retaliation claim, determined that a stronger case existed for recognizing the claim because the agent "was not carrying out official duties in asking for investigations" of the owner. *Id.* at 391. However, the opposite is true here. Elkins is a Selection Officer

---

[8]The Court has reviewed the cases cited by Barnes but finds further discussion of these cases is unwarranted as they do not impact the Court's analysis or the outcome of this case.

for the SSA. Barnes alleges that Elkins stated he used comprehensive hiring procedures and posted job vacancies so applicants could apply. (ECF No. 184 at 5.) He interviewed Barnes and did not hire her. (*Id.* at 8, 9.) Elkins therefore was carrying out official duties as a Selection Officer when he allegedly retaliated against Barnes by not selecting her for an attorney-advisor position.

Additionally, in extending *Bivens* to a First Amendment retaliation claim in *Boule*, the Ninth Circuit relied on *Hartman v. Moore*, 547 U.S. 250 (2006). 998 F.3d at 389-91. In discussing *Hartman*, the Ninth Circuit stated that "[t]he [Supreme] Court wrote that in the absence of probable cause—that is, the absence of an innocent motive—a *Bivens* action would have been available" to plaintiffs alleging that federal prosecutors retaliated against them for protected speech. *Id.* at 390 (citation omitted). The Court emphasized, "[w]hen the *vengeful* officer is federal," that officer "is subject to an action for damages on the authority of *Bivens*." *Id.* (emphasis omitted in part) (quoting *Hartman*, 547 U.S. at 256). The extension of *Bivens* therefore relies upon whether federal officials "have no innocent motive for their actions." *Id.* Here, dissimilar to the agent in *Boule*, Elkins is not absent of an innocent motive. Barnes alleges that Elkins stated that he did not hire Barnes because he felt she was not sufficiently enthusiastic about the position. (ECF No. 184 at 9.) This alone is an innocent motive and raises doubt that Elkins retaliated against Barnes, by not hiring her, solely on the basis that she exercised her right to protected speech.

In sum, the existence of an innocent motive and the fact that Elkins was carrying out official duties distinguishes this action from *Boule*. These distinctions, along with the reasons articulated above, counsel this Court to hesitate in extending *Bivens* to a First Amendment retaliation claim in this specific employment context. Recognizing that the expansion of a *Bivens* remedy is a "disfavored judicial activity," the Court declines to do so in this action for the reasons stated herein. *See Abbasi*, 137 S. Ct. at 1848. As such, Barnes's First Amendment retaliation claim is dismissed.

///

///

### B. ADEA Disparate-Impact Age Discrimination Claim

Defendants make two arguments in relation to Barnes's ADEA disparate-impact age discrimination claim. The first pertains to whether Barnes violated the Court's July 6 Order in amending her SAC. The second relates to whether Barnes has Article III standing to pursue this claim. The Court disagrees with Defendants' arguments and will address them in turn.

#### 1. July 6 Order

In the July 6 Order, the Court granted "Barnes leave to file a fourth amended complaint and amend her First Amendment retaliation claim, and only that claim." (ECF No. 181 at 1.) Because Barnes amended both her First Amendment *and* ADEA disparate-impact claims, Defendants argue the latter claim should be dismissed as the Court merely permitted Barnes to amend her First Amendment claim *only*. (ECF No. 186 at 4.) Barnes counters that a reasonable interpretation of the July 6 Order bars previously dismissed claims (ADEA disparate-treatment and retaliation), and it would be unreasonable to interpret it as preventing her from updating her disparate-impact age discrimination claim. (ECF No. 198 at 2.) Moreover, Barnes states that her revised claim addresses prior criticism that the claim lacked sufficient statistical evidence and advances this case by removing prior impediments. (*Id.*) The Court agrees with Defendants, but for the reasons discussed below, declines to dismiss the claim.

Despite Barnes's argument that it was reasonable to interpret the July 6 Order as allowing her to update her claim, the Court was clear this was prohibited as Barnes was only granted leave to amend her First Amendment retaliation claim. (ECF No. 181 at 1 (emphasis added) (stating that Barnes is granted leave to file the FAC "and amend her First Amendment retaliation claim, and *only* that claim.").) Nevertheless, the Court has reviewed the FAC and finds that Barnes's additional allegations are not significant to change her ADEA disparate-impact age discrimination claim as Barnes is not adding new claims. As such, the Court declines to dismiss this claim.

///

### 2. Article III Standing

Defendants argue that Barnes does not have Article III standing to bring an ADEA disparate-impact age discrimination claim because she has failed to make the requisite showing that each of the three elements for standing have been met. (ECF 186 at 4-6.) Specifically, Defendants argue the SSA's recruitment policies that Barnes contends discriminated against her, did not in fact prevent Barnes from applying for one of the attorney-advisor positions. (*Id.*) Barnes appears to counter that the recruitment policies caused multiple injuries. (ECF No. 198 at 2-8.) For example, Barnes states that she had to "force her way" into the candidate pool and that she lacked critical information that was provided to other candidates. (*Id.* at 4.) The Court disagrees with Defendants.

Three elements must be met to establish Article III standing—the plaintiffs must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Here, Barnes alleges she learned about the attorney-advisor positions by chance and was "forced to interject herself" into the SSA's hiring process at a later date than other candidates. (ECF No. 184 at 16.) It is reasonable to infer that Barnes was disadvantaged because Elkins never provided a copy of the vacancy announcement for the positions in which Barnes nevertheless applied. (*Id.* at 5, 6.) Elkins's recruitment for the positions, however, consisted of sending a call for resumes to UNLV's law school and to the office of outgoing Peace Corps volunteers. (*Id.* at 6.) According to Barnes, the average age of the population of both institutions is well below 40, and of the 26 applicants that applied, all but one were under 40. (*Id.* at 6, 9.) Barnes was not hired, and she alleges the SSA's "recruitment, evaluation, selection, and hire" for the positions had a disparate impact on job applicants like her—age 40 and over. (*Id.* at 9, 15.) These allegations, accepted as true, offer that the SSA's notification to some populations about the positions disadvantaged Barnes and led to her, and others like her, to be denied a position. Her injury is thus "fairly traceable" to the SSA's challenged

conduct. *See Spokeo, Inc.*, 136 S. Ct. at 1547. Accordingly, the Court finds that Barnes has standing to bring this claim.

## IV.  CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Plaintiff Patricia Barnes's fourth amended complaint (ECF No. 184) is the operative complaint.

It is further ordered that Defendants' motion to dismiss (ECF No. 186) is granted in part and denied in part. The First Amendment retaliation claim is dismissed for the reasons stated herein. Barnes's ADEA disparate-impact age discrimination is the only remaining claim in this action.

The Clerk of Court is directed to substitute Andrew Saul with Kilolo Kijakazi pursuant to Fed. R. Civ. P. 25(d).

It is further ordered that Barnes's motion to supplement (ECF No. 218) is granted.

DATED THIS 2nd Day of May 2022.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE